UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TAMYKA BROWN,

Plaintiff,

v.

CITIBANK, N.A.,

Defendant.

CASE NO. 3:25-cv-5119-TL

ORDER ON MOTION FOR LEAVE TO AMEND COMPLAINT

This matter is before the Court on Plaintiff's Motion for Leave to Amend Complaint.[1] Having reviewed the motion, Defendant's response (Dkt. No. 25), Plaintiff's reply (Dkt. No. 32), and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS IN PART and DENIES IN PART the motion.

## I. BACKGROUND

### A. The Complaint

On February 12, 2025, Plaintiff Tamyka Brown filed a civil action against Defendant

[1] The Court regrets the amount of time it has taken to reach this motion. Between January and September 2026, the Western District of Washington received almost 1,400 habeas corpus petitions filed by individuals in immigration detention, compared to 72 in the same period in 2025. A petition for writ of habeas corpus is uniquely urgent, as it is "entitled by statute to special, preferential consideration to [e]nsure expeditious hearing and determination." *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (quoting *Ruby v. United States*, 341 F.2d 585, 587 (9th Cir. 1965)). Also, some 700 more non-prisoner civil cases were filed between January and September 2026 than during the same period in 2025.

Citibank, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Dkt. No. 1. Plaintiff alleged that, between October 29, 2023, and December 19, 2023, she received at least 46 unsolicited "robocalls" from Defendant. *Id.* ¶¶ 11, 18. Plaintiff alleged that Defendant had "initiated, or caused to be initiated, prerecorded robocalls to Plaintiff's cellular telephone number, even though it did not have proper consent for the calls." *Id.* ¶ 30. The Parties submitted a discovery plan (Dkt. No. 19), and discovery commenced. *See* Dkt. No. 16 (stipulated protective order).

**B. The *Head* Class Action**

On January 15, 2025, the district court approved a settlement in *Head v. Citigroup Incorporated*, a class action with the following certified Settlement Class:

> All persons and entities throughout the United States (1) to whom Citibank, N.A. placed a call in connection with a past-due credit card account, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Citibank, N.A. customer or authorized user, (3) via its Aspect dialer and with an artificial or prerecorded voice, (4) from August 15, 2014 through July 31, 2024.

*Head v. Citigroup Inc.*, No. C18-8189, 2025 WL 226660, at *1 (D. Ariz. Jan. 15, 2025); *see Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (order certifying class). Plaintiff asserts that she "excluded herself from that case through the settlement administrator, because she wishes to pursue this action on her own behalf." Dkt. No. 1 ¶ 5.

**C. Motion to Amend**

On December 1, 2025, Plaintiff filed the instant motion for leave to amend her complaint, asserting that the affirmative defenses pleaded by Defendant (*see* Dkt. No. 18 (Answer)) had "offended" her (Dkt. No. 24 at 3), and that she now wishes to bring her complaint on behalf of others, as a class action. *See id.* at 4. In the proposed amended complaint, Plaintiff proposes the following class:

> All persons and entities throughout the United States (1) to whom Citibank, N.A. placed a call in connection with a past-due credit card account, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Citibank, N.A. customer or authorized user, (3) and played an artificial or prerecorded voice.

Dkt. No. 24-1 ¶ 33.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." This is a liberal standard, and a court should decline to grant leave to amend only if there is strong evidence of undue delay, bad faith, prejudice to the opposing party, or futility. *See, e.g.*, *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013).

## III. DISCUSSION

Plaintiff, "ha[ving] determined that the victims in the original complaint are systemic and not an isolated occurrence," seeks the Court's permission to re-plead her individual civil action as a class action. Dkt. No. 24 at 3, 4; *see* Dkt. No. 24-1. Defendant argues that the Court should deny the motion because Plaintiff's proposed amendment is futile (*see* Dkt. No. 25 at 8–15), and because such amendment would prejudice Defendant (*see id.* at 15–16).

"Where . . . a plaintiff seeks to amend an individual action to allege a class action, 'the court cannot examine the effect of allowing an amendment under Rule 15(a) in a vacuum; it must consider the ramifications as they relate to Rule 23, which details the circumstances under which class certification is appropriate.'" *R.G. v. Koller*, No. C05-566, 2006 WL 897578, at *4 (D. Haw. Mar. 16, 2006) (quoting *Fox v. Bd. of Trs. of Trs. of State Univ. of N.Y.*, 148 F.R.D. 474, 489 (N.D.N.Y. 1993)). "To determine whether [a plaintiff's] proposed amendment is futile, it is necessary to evaluate the likelihood that [their] proposed class will be certified pursuant to Fed.

R. Civ. P. 23(c). If [a plaintiff's] proposed class cannot be certified, leave to amend should be denied." *Presser v. Key Food Stores Co-op, Inc.*, 218 F.R.D. 53, 56 (E.D.N.Y. 2003)

As recited above, Plaintiff's proposed class includes:

> All persons and entities throughout the United States (1) to whom Citibank, N.A. placed a call in connection with a past-due credit card account, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Citibank, N.A. customer or authorized user, (3) and played an artificial or prerecorded voice.

Dkt. No. 24-1 ¶ 33. This is, essentially, the same class as that certified in *Head*, but ostensibly broadened to include individuals who received the objected-to robocalls after July 31, 2024.[2] Plaintiff excludes from her class "persons who were members of the settlement class in *Head v. Citibank, N.A.* who did not exclude themselves[.]" *Id.* ¶ 34.

In objecting to the proposed amended pleading (and the proposed class), Defendant characterizes Plaintiff's proposed class definition as follows:

> The practical effect of Plaintiff's proposed class definition results in two groups of putative class members: (1) individuals who (like Plaintiff) allegedly received calls during the *Head* class period but opted out of that settlement; and (2) individuals who (unlike Plaintiff) allegedly received calls *after* the *Head* settlement.

Dkt. No. 25 at 8. The Court credits Defendant's summary and agrees that Plaintiff's representation of each group is problematic.

As to the first group, Plaintiff forfeited her right to represent this class of litigants when she opted out of the *Head* class action. "[A] person who opts out receives the right to go it alone,

[2] The *Head* class specifically includes individuals who received robocalls "via [Citibank's] Aspect dialer." *Head*, 2025 WL 226660, at *1. Having reviewed Plaintiff's proposed amended complaint, the Court finds it irrelevant, with respect to the disposition of this motion, that Plaintiff has omitted the "Aspect dialer" element from her class definition. Irrespective of the technology by which the numbers were dialed, the complained-of conduct here is broadly manifested in the calls themselves, and the alleged harm in the receipt thereof. In any event, Plaintiff does not allege the existence of a universe of potential class members who received a robocall placed by some method other than the "Aspect dialer."

not to launch a competing class action. Preserving the right to litigate individually, as one's own champion, is the point of opting out." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 769 (7th Cir. 2003), *abrogated on other grounds by Smith v. Bayer Corp.*, 564 U.S. 299 (2011). Ninth Circuit case law supports this rule, holding that "due process requires that individual members of a class certified under Rule 23(b)(3) be given an opportunity to opt out of the settlement class *to pursue their claims separately*[.]" *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012) (emphasis added); *see Silber v. Mabon*, 18 F.3d 1449, 1451 n.2 (9th Cir. 1994) ("Pursuant to Rule 23(c)(2), an absent class member must be given notice of his right to opt out of the class and to pursue his claim *individually*." (emphasis added)). This makes sense, as the benefits of class action litigation accrue through consolidation and efficiency:

> Clearly, a single nationwide class action seems to be the best means of achieving judicial economy. In its absence, these competing and duplicative actions not only generate unnecessary litigation and duplicative fees, but also they may result in delay, pose complicated problems of judicial coordination in some instances, increase the risk of disparate verdicts raising serious questions of fairness, and, in situations in which there are limited funds available as compensation, result in the unequal distribution of those funds.

*Martin v. Cargill, Inc.*, 295 F.R.D. 380, 389 (D. Minn. 2013) (quoting 7B Wright & Miller's Federal Practice & Procedure § 1798.1 (3d ed.)). When Plaintiff opted out of the *Head* class, she forfeited her right to represent other putative members of that class.

And as to the second group—individuals who received robocalls after the closure of the *Head* class—Plaintiff is an unsatisfactory class representative, because she does not allege that she received any robocalls after the closing date of the *Head* settlement. *See* Dkt. No. 24-1 ¶ 22. A class representative is typical where their "claims arise from the same alleged course of conduct and are based on the same legal theories" as those of the potential class members. *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007). "When it is alleged that the

same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims." *Smith v. Univ. of Wash. Law School*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998).

Here, Plaintiff received the offending calls between October 29, 2023, and December 19, 2023. *Id.* This is a fundamental problem because, as pleaded, the alleged motivation behind post–*Head* settlement calls—a necessary ingredient of the calculation of potential damages, *see* 47 U.S.C. § 227(b)(3)(C) (providing for treble damages where defendant willfully or knowingly violated statute)—was not the same as the alleged motivation behind pre–*Head* settlement calls. As to the pre-settlement calls, of which Plaintiff was a recipient, Plaintiff's claim is based on Defendant's allegedly "intentional, or at least reckless" misconduct. Dkt. No. 24-1 ¶ 44. This allegation of intentionality or recklessness is based on Plaintiff's assertion that "[Defendant's] strategy was to make as many debt collection robocalls as practicable before July 31, 2024, the end-date for the *Hand* [*sic*] settlement class regardless of whether it believed it had consent, because its liability for such calls would be released as part of that settlement." *Id.* But if Defendant's liability and Plaintiff's damages are predicated upon Defendant's prosecution of this hell-for-leather "strategy," then this theory of liability cannot apply to purported class members who received debt collection robocalls after July 31, 2024. After all, once that deadline had lapsed, any *Head*-liability-related motivation to make robocalls similarly evaporated. As Defendant summarizes, Plaintiff's "theory of the case, which is central to the question of damages, is not applicable to putative class members who allegedly received calls after the *Head* settlement class."

Put another way, pre–*Head* settlement and post–*Head* settlement class members were, respectively, subjected to two different courses of misconduct, one that was informed by an

allegedly intentional and reckless attempt to make as many calls as possible under the umbrella of the *Head* settlement, and one that was not. And Plaintiff also would not be typical of the post–*Head* settlement robocalls class because she was not subject to them.

Therefore, because amending the complaint to a class-action complaint would be futile with respect to class certification, the Court DENIES the motion in that regard. However, with respect to Plaintiff's request to augment her pleading with additional factual allegations, Rule 15's liberal standard applies, and the Court GRANTS the motion and will permit the amendment(s).

## IV. CONCLUSION

Accordingly, Plaintiff's motion for leave to amend her complaint is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1) To the extent that Plaintiff seeks to re-plead her complaint as a class action, Plaintiff's motion is DENIED.

(2) To the extent that Plaintiff seeks to supplement her complaint with additional factual allegations (*see, e.g.*, Dkt. No. 24-1 ¶¶ 24, 28–30) related to her invidivual complaint, Plaintiff's motion is GRANTED.

(3) Plaintiff SHALL submit an Amended Complaint, in accordance with this Order, no later than **November 16, 2026.**

Dated this 2nd day of November 2026.

Tana Lin
United States District Judge